IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ANITA GAIL SPANO, | § | |
| | § | |
| V. | § | A-16-CV-1309-AWA |
| | § | |
| NANCY A. BERRYHILL, ACTING | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff's Brief (Dkt. No. 11); Defendant's Brief (Dkt. No. 12); and Plaintiff's Reply (Dkt No. 13). Also before the Court is the Social Security record filed in this case (Cited as "Tr.").

### I. General Background

Plaintiff Anita Gail Spano brings this appeal challenging the final decision denying her disability benefits. Spano has a high school education and completed secretarial school in 1979. (Tr. 175). Her past work includes work in a pet boarding facility, performing data entry in a warehouse, and working for a home-building company. *Id.* Spano filed an application for Disability Insurance Benefits on August 12, 2013, alleging disability due to depression, fibromyalgia, rheumatoid arthritis, chronic fatigue syndrome, Sjogren's disease, and Raynaud's syndrome. (Tr. 174). This application was denied initially on October 14, 2013, and was denied on reconsideration on January 8, 2014. (Tr. 74, 82). After a hearing, ALJ James Bentley denied the application on September 9, 2015. (Tr. 11-21).

In his Decision, the ALJ found Spano last met the insured status requirements of the Social Security Act on March 31, 2012. (Tr. 13). He found Spano did not engage in substantial gainful activity during the period between her alleged onset date of December 17, 2005, and the date she was

last insured, March 31, 2012. (Tr. 13). The ALJ found that, through the date last insured, Spano suffered from severe impairments of depression, osteoarthritis, and fibromyalgia. (Tr. 13). He also found that, through the date last insured, Spano did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (Tr. 14). The ALJ determined that Spano was unable to perform her past relevant work, but that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, and she was therefore not disabled. (Tr. 19-20). The Appeals Council denied review on October 18, 2016, making the ALJ's decision the final Agency decision, which Spano now appeals.

## II. Legal Standards

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine if a claimant is disabled the Commissioner uses a five-step analysis:

1. a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;

2. a claimant will not be found to be disabled unless he has a "severe impairment";

3. a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors;

4. a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and

5. if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *see also* 20 C.F.R. § 404.1520. A finding of disability or no disability at any step "is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). The claimant has the burden of proof for the first four steps; however, at step five, the burden initially shifts to the Commissioner to identify other work the applicant is capable of performing. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If the Commissioner "fulfills his burden of pointing out potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternate work." *Id.* (internal quotation marks omitted).

Judicial review of the Commissioner's final decision under the Social Security Act, 42 U.S.C. § 405(g), is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner applied the correct legal standards. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997). Substantial evidence is more than a scintilla of evidence but less than a preponderance—in other words, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (internal quotation marks omitted). The Court considers "four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [the claimant's] age, education, and work history." *Id.* at 174. However, a reviewing court "may not reweigh the evidence, try the issues *de novo*, or substitute [its] judgment for that of the [Commissioner]." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). If the Court finds substantial evidence to support the decision, the Court must uphold the decision.

*See Selders*, 914 F.2d at 617 ("If the . . . findings are supported by substantial evidence, they are conclusive and must be affirmed."); *see also* 42 U.S.C. § 405(g).

### III. Analysis

Spano presents two issues for review: (1) the ALJ erred as a matter of law in failing to properly consider the medical opinions provided by Dr. Alissa, Spano's treating physician; and (2) the ALJ erred by failing to develop the record and obtain a functional assessment of Spano's limitations from a qualified medical expert. (Dkt. No. 11 at 9, 12).

**A.     The ALJ's Consideration of Dr. Alissa's Opinion**

Spano complains that the ALJ erred because he failed to discuss the opinions of Spano's treating physician, Dr. Alissa, and because he rejected the opinions on the basis that they were formed after the expiration of Spano's insured status. Spano argues this was harmful legal error because, the ALJ failed to provide "good reasons" for rejecting the treating physician's opinions as required by the regulations, and for failing to evaluate the opinions in light of the *Newton* factors. *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000); 20 C.F.R. § 404.1527(c)(2).

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. *See Leggett, v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir. 1994). However, a treating physician's opinion on the nature and severity of a patient's impairment will only be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 175-176 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)(2)). "[F]or good cause shown, the ALJ may discount, or even disregard entirely, the opinion of the treating

4

physician." *Brown v. Apfel*, 192 F.3d 492 (1999). The ALJ may discount a treating physician's opinion if it is unsupported by the record. *Id.*

The ALJ gave Dr. Alissa's opinions diminished weight, "as they were completed several years after the date last insured." (Tr. 18). Spano's last date insured was March 31, 2012. Dr. Alissa completed a RFC questionnaire on May 30, 2014 (Tr. 398-99), a mental capacity form on August 30, 2014 (Tr. 401-03), and another RFC questionnaire on March 6, 2015 (Tr. 414-15). Because Spano's Title II insured status expired on March 31, 2012, she bore the burden of establishing that she became disabled on or before that date to be eligible for benefits. *McLendon v. Barnhart*, 184 Fed. Appx. 430, 431 (5th Cir. 2006). As made clear by the Fifth Circuit panel in *McLendon*:

> The mere presence of an impairment does not necessarily establish a disability. If a claimant has a degenerative or ongoing impairment, the relevant inquiry is whether the claimant was actually disabled during the relevant time, not whether a disease existed that ultimately progressed to a disabling condition. Evidence showing a degeneration of a claimant's condition after the expiration of his [or her] Title II insured status is not relevant to the Commissioner's Title II disability analysis.

184 Fed. Appx. at 431; *See Torres v. Shalala*, 48 F.3d 887, 894 n. 12 (5th Cir. 1995). A claimant who becomes disabled after the expiration of her insured status is not entitled to disability benefits. *Dominguez v. Astrue*, 286 F. App'x 182, 186 (5th Cir. 2005).

A treating physician's opinion is not facially invalid simply because it is outside the period the claimant was last insured. *Hutchins v. Colvin*, 2015 WL 4660976 (N.D. Tex. 2015). "[A] claimant may rely on retrospective medical opinions of treating physicians." *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983). However, while a retrospective opinion can prove the existence of a disability, to be relevant, the retrospective opinion must refer clearly to the relevant period of

5

disability and not simply express an opinion to the claimant's current status. *McLendon,* 184 F. App'x at 432 (5th Cir. 2006) (citing *Likes v. Callahan*, 112 F.3d 189 (5th Cir. 1997); *Ivy v. Sullivan*, 898 F.2d 1045 (5th Cir. 1990)). Thus, to the extent the administrative record contains treatment notes after Spano's last insured date of March 31, 2012, those records are relevant only to the extent that they might establish that she was disabled *during the relevant period*. *Brown v. Astrue*, 344 Fed. Appx. 16, 20–21 (5th Cir. 2009); *McLendon*, 184 Fed. Appx. at 431; *Halley v. Barnhart*, 158 Fed. Appx. 645, 648 (5th Cir. 2005).

The Commissioner argues that the diminished weight afforded Dr. Alissa's opinions was not in error, as the opinions did not refer to Spano's limitations during the relevant period, the opinions were not retrospective, and thus do not qualify as evidence of Spano's disability. Spano in turn, relies on *Davidson v. Colvin*, 164 F. Supp. 3d 926, 941 (N.D. Tex. 2015), for the proposition that an ALJ cannot ignore a physician's opinion simply because that evidence post-dates the date last insured (DLI), and must give "good reason" for giving the opinion diminished weight. Spano misreads *Davidson*, however, as it does not hold that an ALJ cannot disregard evidence that post-dates the DLI, but rather stands for the proposition that the ALJ cannot dismiss evidence that *pre-dates* the DLI. The law gives the ALJ more discretion with regard to medical evidence after the DLI. And other than cases addressing retrospective medical opinions, Spano cites no cases from this circuit finding that an ALJ erred by not considering evidence post-dating the DLI. *Cf. Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008); *Halvorson v. Heckler*, 743 F.2d 1221, 1225 (7th Cir. 1984); *see Luckey v. Astrue*, 458 Fed. Appx. 322, 324 (5th Cir. 2011) (finding retrospective medical diagnoses may constitute relevant evidence of the onset of disability). Moreover, *Davidson* does not stand for the proposition that the ALJ was required to give "good reasons" for not giving Dr. Alissa's

post-DLI non-retrospective opinions controlling weight, or was otherwise required to utilize the *Newton* factors.

In this case, the records after Spano's DLI do not state opinions or make any findings regarding whether Spano suffered from a disabling condition between 2005 and 2012, nor do they state specifically what Spano's functional limitations were during that period. (Tr. 398-99, 401-03, 411-12). Rather, they are focused on Spano's condition at the time of those visits, all of which are after the DLI. Spano argues that Dr. Alissa's records reflect an extremely limited RFC based upon the same complaints she made in the medical records during the relevant period, and thus qualify as retrospective opinions. However, Dr. Alissa's records do not reflect a retrospective opinion of Spano's past abilities during the time she was insured; instead, Dr. Alissa's records only reflect Spano's current functioning at the time those records were made. (Tr. 398-99, 401-03,411-13). *See also Haywood v. Sullivan*, 888 F.2d 1463, 1472 (5th Cir. 1989) (an evaluation after the ALJ's decision showing a claimant's current functioning does not provide evidence of the claimant's condition during the relevant period). Thus, these statements are irrelevant to whether Plaintiff was disabled prior to March 2012, and the ALJ did not err in giving them diminished weight. (Tr. 398-99, 401-03, 411-12).

The only record evidence from Dr. Alissa that might possibly refer to the relevant period is the single, conclusory statement that "It is my opinion that my patient has had the limitations and restrictions outlined in the Residual Functional Capacity Questionnaire since 2012." (Tr. 416). But when read in conjunction with the rest of the records—which show that Alissa began treating Spano in November of 2012, six months after her insured status ended—this evidence is not relevant, as it is outside the insured period. *Castillo v. Bernhart*, 325 F.3d 550, 551-2 (5th Cir. 2003).

7

Moreover, even assuming Dr. Alissa intended to opine about Spano's RFC during the relevant period (December 2005 to March 2012)—a conclusion the Court rejects—the medical records from that period would not support the conclusion that Spano suffered from a disabling condition. (Tr. 293-325). Specifically, looking at the medical notes from her treating physician at that time, those notes do not reflect Spano was disabled as defined by the Act. Starting with the most recent visits during the insured period, on April 26, 2012, Dr. Ahmed, Spano's physician, diagnosed her with "Sjogren's, osteoarthritis, fibromyalgia, and depression." (Tr. 294). He reported that her Sjogren's disease was stable, her elbow was worsening, "but pt. packing will be moving," her pain was described as "mild worsening" and her muscle strength as "5/5." (Tr. 294). On December 29, 2011, Dr. Ahmed had stated that her Sjogren's, osteoarthritis, fibromyalgia, and depression were "all stable" and her muscle strength was "5/5."(Tr. 298). On June 27, 2011, the physician reported that Spano suffered a painful hip and was given an injection for bursitis. (Tr. 300).

On November 21, 2010, the physician reported that Spano's husband had just lost his job, that she quit her job at Petsmart, her insurance was running out and that she "may be looking into disability." (Tr. 302). He reported that her Sjogren's, osteoarthritis, and fibromyalgia were all stable. *Id.* The physician stated that once Spano's insurance ran out, she would be unable to afford her depression medication and may "run into trouble." *Id.* On July 1, 2010, Spano's physician again reported that her Sjogren's was stable, while her osteoarthritis and fibromyalgia had improved. (Tr. 304).

In December of 2009, the physician reported that Sjogren's, osteoarthritis and fibromyalgia were all stable, while depression was an issue and Cymbalta was restarted. (Tr. 306). In April of

8

2009, Spano reported that a prior knee injection "really helped" and that she was working. Her Sjogren's, osteoarthritis and fibromyalgia were all stable. (Tr. 308).

In October of 2008, her Sjogren's was stable, her fibromyalgia was "not bad" and Spano required an injection in her knee for osteoarthritis because her elbow and knee pain were worse. (Tr. 310). In April of 2008, Spano's physician reported that her Sjogren's and fibromyalgia had improved, although Spano reported she was "achy." The doctor also reported that he was unable to detect any significant tenderness or pain in the regions about which she complained. (Tr. 315).

In November of 2007, Spano reported knee pain at night and while walking. (Tr. 316). In May of 2007, Spano reported that "joint pain was not a big issue," and her doctor reported her Sjogren's was stable and "no significant joint findings." (Tr. 318-19). In November of 2006, her physician reported "Sjogren's stable. Fibromyalgia stable," he continued her on her medication regime and requested she return in six months. (Tr. 321). On July 27, 2006, Spano's doctor reported that her depression medication was switched and she "has actually been feeling much better," "fibromyalgia has not been a big issue," "trigger points are minimal," and "Sjogren's stable, fibromyalgia improved." (Tr. 320).

In October of 2005, Spano was on Ibuprofen three times a day and that her pain was "ok." (Tr. 322). On that same visit the doctor reported a "significant component of depression" as Spano's husband had just died. Spano complained of knee and hip pain, but stated that Ibuprofen helped. The doctor found her Sjogren's and fibromyalgia were stable. (Tr. 323). In April of 2005, Spano's physician reported that "there is a lot of marital stress" but that "pain does not seem to be a big issue for her." He reported that her Sjogren's and fibromyalgia were stable, and "depression seems to be a bigger issue and this seems to be aggravated by the home situation." Spano reported she was

9

considering going to see a psychiatrist. (Tr. 325). In October of 2004, Spano's physician reported her Sjogren's, fibromyalgia, and depression were all stable, and continued her on Ibuprofen and antidepressants. (Tr. 324).

Thus, the treatment notes reflect that from December 2005 to March 2012, Spano's fibromyalgia, Sjogren's disease, and depression were stable, and she had normal strength, with understandable complications from depression after the death of her husband, which improved with medication. Thus, even if Dr. Alissa's evidence is read to state a retrospective opinion that Spano was disabled during this time frame, the medical evidence could not support such an opinion.

Additionally, Spano's own testimony undermines any conclusion that she was disabled during the relevant period. Spano testified that during this period she worked part time, cared for her child, drove, dressed and bathed, shopped, performed household chores, and cared for her dogs. (Tr. 29-45). She also testified that prior to 2012, she could stand for 2.5 to 3 hours at a time, that she could lift 20 pounds, and that she could reach into a cupboard, all of which is inconsistent with a conclusion that she was disabled. As of September 2013, Spano reported that she cooked daily means, did daily laundry, drove, ran errands, cared for her dogs, dusted, mopped, swept the porch, shopped once a week for a few hours, dined with friends, attended church, attended Bible study, attended football games, prepared snacks for the games or church, and spoke on the phone with family. (Tr. 183-84). An ALJ may decline to afford controlling weight to a treating physician opinion in cases where substantial non-medical evidence shows that an individual's daily activities are less restrictive than the treating physician's recommended limitations. Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4.

Spano also testified her impairments worsened *after* her insured status expired. (Tr. 33, 37, 48). The evidence supports that Spano's condition deteriorated somewhat after her DLI, and that

Dr. Alissa's reports do not qualify as evidence of disability during the relevant period. While Dr. Alissa's reports may highlight symptoms of undiagnosed conditions, this is not sufficient evidence of disability itself. *See, e.g., Brown v. Astrue*, 344 Fed.Appx. 16, 20 n. 3 (5th Cir. 2009). "If a claimant has a degenerative or ongoing impairment, the relevant inquiry is whether the claimant was actually disabled during the relevant time, not whether a disease existed that ultimately progressed to a disabling condition." *McLendon*, 184 Fed. Appx. at 431 (citing *Torres,* 48 F.3d at 894 n. 12).

Because Dr. Alissa did not proffer a retrospective opinion, her opinion was not relevant, and the ALJ was not required to give "good cause for affording that opinion diminished weight" nor was the ALJ required to perform a *Newton* analysis. The Court rejects this point of error.

### B. The ALJ's Assessment of Spano's RFC

Spano argues that the ALJ erred because he assessed Spano's RFC without obtaining a medical source statement detailing Spano's functional abilities prior to her DLI. The ALJ found that, through the date last insured, Spano had the residual functional capacity to perform:

> Light work… except with a sit/stand option defined as a temporary change in position from sitting to standing and vice versa with no more than one change in position every 30 minutes and without leaving the work station so as not to diminish pace or production. She was able to occasionally climb ramps and stairs, balance, kneel, crouch, and crawl. She was unable to climb ladders, ropes, or scaffolds. She was able to handle and finger bilaterally frequently, but not constantly. She could not perform any overhead work. She was able to perform simple tasks with routine supervision.

(Tr. 15). Spano argues that the ALJ's determination of her RFC is not supported by substantial evidence because he rejected Dr. Alissa's opinions, relied on his own lay interpretations of the medical data, and failed to obtain a medical source statement before determining Spano's RFC.

The RFC is an assessment, based on all of the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite her impairments. 20 C.F.R. §§

11

404.1545(a), 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The responsibility to determine a claimant's RFC belongs solely to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). The relative weight to be given the evidence is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001) (per curiam). The ALJ is not required to incorporate limitations in the RFC that he or she did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam).

The Fifth Circuit has said that an ALJ usually should request a medical source statement that describes the types of work that the claimant is still capable of performing. *Ripley*, 67 F.3d at 557. "The absence of such a statement, however, does not, in itself, make the record incomplete." *Id.* In a case such as this one, where no medical source has provided a statement regarding Plaintiff's RFC during the relevant period, the Court's inquiry focuses upon whether substantial evidence in the existing record supports the ALJ's decision. *Id.*

The Court finds that substantial evidence supports the ALJ's decision as to Spano's RFC. The medical evidence during the relevant period—which is summarized above—is not complex or conflicting. The ALJ discussed the objective medical evidence that pertained to the relevant period when assessing Spano's RFC. (Tr. 17-18). Objective medical findings are relevant to the ALJ's RFC analysis. SSR 96-8p, 1996 WL 374184, at *5. The ALJ also properly considered Spano's statements and testimony regarding her pain and limitations prior to her date last insured. (Tr. 18). Symptoms, reports of daily activities, and lay evidence are relevant to the ALJ's RFC analysis. SSR 96-8p, 1996 WL 374184, at *5. Spano testified that prior to 2012 she could probably lift about 20 pounds, consistent with the ALJ's finding that she could perform light work. (Tr. 15-16, 37); 20 C.F.R. § 404.1567(b). The ALJ also recognized Spano's overall normal activities of daily living prior to her DLI, noting that Spano reported cooking dinner and performing light household chores.

(Tr. 18, 183- 85). Spano also reported that she could drive and shop and that she attended church and her son's football games. (Tr. 185, 187). The ALJ properly accounted for Spano's subjective complaints and daily activities by limiting her to a reduced range of light work. (Tr. 15, 18); *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988) (affirming ALJ's decision that Plaintiff had the RFC for light work where Plaintiff's daily activities included cooking, cleaning house, shopping for groceries, doing laundry, and driving "when necessary"). Thus the Court finds that the ALJ's determination of Spano's RFC is supported by substantial evidence in the record.

Plaintiff lastly argues that the ALJ should have ordered a consultative examination in this case. (Dkt. No. 11 at 12). An ALJ has a duty to develop the facts relative to a claim for benefits, and if an individual's medical evidence is insufficient to make a proper determination of disability, a consultative examination may be required. *See Kane v. Heckler*, 731 F.2d 1216, 1219-20 (5th Cir. 1984); 20 C.F.R. § 404.1517. If the ALJ does not satisfy his duty, his decision is not substantially justified. *Id.* at 1219. Reversal of the ALJ's decision, however, is appropriate only if the applicant shows that she was prejudiced. *Id.* at 1220. Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision. *Id.*

The regulations explain that the agency will not obtain a consultative examination in cases where the claimant's "insured status expired in the past and there is no possibility of establishing an onset date prior to the date [the] insured status expired. . . ." 20 C.F.R. § 404.1519b(c). Spano's insured status expired in March 2012, more than three years before the ALJ issued his decision. Spano has failed to point to additional evidence that would have been produced had the ALJ more fully developed the record, and has not shown that evidence would have led to a different conclusion. Especially in light of Spano's reports of her daily activities in 2013, Spano has not shown she was

prejudiced by the ALJ's failure to order a consultative examination. "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The Court finds that the ALJ did not err and substantial evidence supports his decision.

## IV. Conclusion

In summary, the Court finds that the ALJ applied the proper legal standards to Spano's case, and that his findings are supported by substantial evidence in the record. The decision of the Commissioner of the Social Security Administration is therefore AFFIRMED.

SIGNED this 20th day of December, 2017.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE